**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BUMBLE BEE PARENT, INC., *et al.*,[1] | Case No. 19-12502 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Docket Ref. Nos. 31, 162** |

**ORDER (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF ALL
OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) AUTHORIZING AND
APPROVING ENTRY INTO THE STALKING HORSE APA, (C) APPROVING THE
DESIGNATION OF THE STALKING HORSE BIDDER, (D) APPROVING BID
PROTECTIONS, (E) SCHEDULING A SALE HEARING AND OBJECTION
DEADLINES WITH RESPECT TO THE SALE, (F) SCHEDULING AN
AUCTION, (G) APPROVING THE FORM AND MANNER OF NOTICE OF THE
SALE HEARING AND AUCTION, (H) APPROVING CONTRACT ASSUMPTION
AND ASSIGNMENT PROCEDURES, AND (I) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion") of the above-captioned debtors and

debtors in possession (collectively, the "Debtors") for the entry of an order (i) approving the

bidding procedures attached hereto as **Exhibit 1** (the "Bidding Procedures")[2] in connection with

the sale of the Debtors' assets (referred to herein and the Bidding Procedures as the "U.S.

Assets"), which such sale shall, subject to the CCAA Court's approval of the Bidding Procedures,

also involve the disposition of the CCAA Debtors' assets (the "Canadian Assets") and equity

interests in the non-Debtor, non-U.S. entities that own assets primarily used by and operated for

the benefit of the Anova frozen food business (the "Foreign Entity Equity," and collectively with

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Bumble Bee Parent, Inc. (5118); Bumble Bee Holdings, Inc. (1051); Bumble Bee Foods, LLC (0146); Anova Food, LLC (2140); and Bumble Bee Capital Corp. (7816).  The headquarters for the above-captioned Debtors is 280 Tenth Avenue, San Diego, CA 92101.

[2] Capitalized terms used but not otherwise defined herein are to be given the meanings ascribed to them in the Motion, the Bidding Procedures, or the *Interim Order: (I) Authorizing Debtors to (A) Obtain Postpetition Secured Financing And (B) Utilize Cash Collateral; (II) Granting Liens And Superpriority Administrative Expense Claims; (III) Granting Adequate Protection; (IV) Modifying Automatic Stay; (V) Scheduling Final Hearing; And (VI) Granting Related Relief* [Docket No. 77] (the "Interim DIP Order"), as applicable.

the U.S. Assets and Canadian Assets, the "Company Assets," and such sale, the "Sale"); (ii) authorizing and approving the Debtors' entry into the Stalking Horse APA; (iii) approving the Expense Reimbursement and Break-up Fee (each as defined in the Stalking Horse APA) as set forth herein for the Stalking Horse Bidder; (iv) scheduling an auction of the Company Assets (the "Auction") and a hearing for the approval of the proposed Sale (the "Sale Hearing"); (v) establishing the procedures (as set forth herein, the "Assignment Procedures") for the assumption and assignment of the Debtors' executory contracts or unexpired leases in the Sale (the "Contracts") and the fixing of cure amounts required to be paid pursuant to Bankruptcy Code section 365(b) (the "Cure Amounts"); (vi) authorizing and approving the form and manner of the notice of the Sale of the Company Assets, the Auction, and the Sale Hearing, the form of which notice is attached hereto as **Exhibit 2** (the "Notice of Auction and Sale Hearing") and **Exhibit 3** (the "Publication Notice"); and (vii) authorizing and approving the form and manner of notice of (a) the potential assumption and assignment by the Debtors of Contracts and (b) proposed Cure Amounts, the form of which notice is attached hereto as **Exhibit 4** (the "Cure Notice"); and (viii) granting related relief; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and this Court having found that venue of these Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that notice of the Motion has been given as set forth in the Motion and that such notice is adequate and no other or further notice need be given except as set forth herein with respect to the

Auction, the Sale Hearing, and the potential assumption and assignment of Contracts; and a reasonable opportunity to object to or be heard regarding the relief provided herein has been afforded to parties-in-interest pursuant to Bankruptcy Rule 6004(a); and this Court having considered the First Day Declaration, the Winthrop Declaration,[3] and the other evidence adduced in support of entry of this Order; and upon the record of the hearing as to the relief requested in the Motion as to the Bidding Procedures and all of the proceedings had before this Court; and all of the informal and formal[4] objections to such relief having been considered and withdrawn, resolved, or overruled; and this Court having found that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest; and this Court having found that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT**:[5]

A.    The Bidding Procedures, in the form attached hereto as <u>Exhibit 1</u>, are fair, reasonable and appropriate, and are designed to maximize the value to be achieved from the Sale.

---

[3] *Declaration of Eric Winthrop in Support of the Debtors' Motion for Entry of Orders (I) (A) Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors' Assets, (B) Authorizing and Approving Entry into the Stalking Horse APA, (C) Approving the Designation of the Stalking Horse Bidder, (D) Approving Bid Protections, (E) Scheduling a Sale Hearing and Objection Deadlines With Respect to the Sale, (F) Scheduling an Auction, (G) Approving the Form and Manner of Notice of the Sale Hearing and Auction, (H) Approving Contract Assumption and Assignment Procedures, and (I) Granting Related Relief; and (II) (A) Approving the Stalking Horse Agreement; (B) Approving the Sale to the Stalking Horse Bidder (or Backup Bidder) of Substantially All of the Purchased Assets of the Debtors, Pursuant to Section 363 of the Bankruptcy Code Free and Clear of All Liens, Claims, Interests, and Encumbrances; (C) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Pursuant to Section 365 of the Bankruptcy Code, (D) Authorizing the Debtors to Consummate Transactions Related Thereto, and (E) Granting Related Relief* [Docket No. 162] (the "<u>Winthrop Declaration</u>").

[4] *See* limited objection filed by the Chubb Companies [Docket No. 111]; limited objection filed by the United States, on behalf of the Antitrust Division of the United States Department of Justice [Docket No. 112].

[5] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

25744020.1

B.      The Bidding Procedures comply with the requirements of Local Rule 6004-1(c).

C.      The Assignment Procedures provided for herein are fair, reasonable and appropriate and consistent with the provisions of section 365 of the Bankruptcy Code.

D.      The Debtors have articulated good and sufficient business reasons for this Court to approve (i) the Bidding Procedures, including the scheduling of bid deadlines, auction, and sale hearing with respect to the proposed Sale and the form and manner of notices related thereto; (ii) the establishment of procedures to assume and assign the Contracts and fix the Cure Amounts and the form and manner of notices related thereto; (iii) the Debtors' entry into the Stalking Horse APA with the Stalking Horse Bidder, subject to higher or otherwise better offers as set forth in the Bidding Procedures; and (iv) the Debtors' agreement to pay the Expense Reimbursement and Break-Up Fee (as set forth in Section 7.1 of the Stalking Horse APA), as modified by this Order, and the protections afforded to the Expense Reimbursement and Break-Up Fee pursuant to sections 503(b), 507(a)(2) and 507(b) of the Bankruptcy Code, all subject to the terms of the Stalking Horse APA.

E.      The form and manner of service of the Notice of Auction and Sale Hearing, and the Debtors' proposed publication of the Notice of Auction and Sale Hearing, as proposed in the Motion, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Sale, the Bidding Procedures, and the Assignment Procedures to be employed in connection therewith, including, without limitation: (i) the date, time and place of the Auction (if one is held); (ii) the Bidding Procedures and the dates and deadlines related thereto; (iii) the objection deadline for the Sale and the date, time and place of the Sale Hearings; (iv) reasonably specific identification of the Company Assets, including the sale of certain of the Debtors' or their estates' causes of actions, including those arising under chapter 5 of the

Bankruptcy Code; and (v) representations describing the Sale as being free and clear of liens, claims, interests and other encumbrances, with all such liens, claims, interests and other encumbrances attaching with the same validity and priority to the proceeds of the Sale; and no other or further notice of the Sale shall be required.

F.    The Cure Notice is appropriate and reasonably calculated to provide each non-debtor party to any Contracts (such parties, collectively, the "Non-Debtor Counterparties") with proper notice of the potential assumption and assignment of the applicable Contract, the proposed Cure Amount, and the Assignment Procedures. The inclusion of any particular contract or lease on a Cure Notice shall not be deemed to be an admission that such contract or lease is an executory contract or unexpired lease of property or require or guarantee that such contract or lease will be assumed and/or assigned, and all rights of the Debtors with respect to the foregoing are reserved.

G.    No further notice beyond that described in the foregoing paragraphs is required in connection with the Sale.

H.    The entry of this order (this "Order" or the "Bidding Procedures Order") is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest.

**IT IS HEREBY ORDERED THAT**:

1.    The Motion is granted as set forth herein.

2.    All objections to the Motion or the relief provided herein, as they pertain to the entry of this Order, that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits.

25744020.1

## The Bidding Procedures

3.       The Bidding Procedures are incorporated herein and approved, and shall apply with respect to the Sale.  The Debtors are authorized to take all actions reasonable and necessary or appropriate to implement the Bidding Procedures.

4.       The Debtors are authorized to conduct the process for soliciting bids for the Sale, responding to Qualified Bids (including, if applicable, designating a Qualified U.S./Canada Joint Bid), conducting the Auction, and designating one or more Successful Bids, Successful Bidders, Backup Bids, and Backup Bidders, all in accordance with the Bidding Procedures.

5.       Potential Bidders or Qualified Bidders (other than the Stalking Horse Bidder, and solely to the extent set forth in the Stalking Horse APA) must disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation.  For the avoidance of doubt, no Qualified Bidder (other than the Stalking Horse Bidder, and solely to the extent set forth in the Stalking Horse APA, as modified by this Order) will be permitted to request at any time, whether as part of the Auction, if any, or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

6.       The Stalking Horse Bidder shall be deemed a Qualified Bidder for purposes of this Order and the Bidding Procedures.  Subject to Paragraph F of the Bidding Procedures, the Prepetition Term Loan Agent and the DIP Term Loan Agent (together, the "Term Agents"), the Prepetition ABL Agent, and the DIP ABL Agent (together, the "ABL Agents") shall be deemed a Qualified Bidder for all purposes under this Order (in such capacity, such participating lenders the "Credit Bid Backup Bidder").  The Credit Bid Backup Bidder may submit a Credit Bid Backup

Bid in accordance with Paragraph F of the Bidding Procedures; *provided*, *that,* (i) the Term Agents may not submit or consummate a Credit Bid Backup Bid for any ABL Priority Collateral or Prepetition ABL Priority Collateral unless (a) all Prepetition ABL Credit Agreement Indebtedness and all ABL DIP Obligations are repaid in full in cash immediately upon the closing thereof  or (b) the ABL Agents agree to any other treatment of the Prepetition ABL Credit Agreement Indebtedness and the ABL DIP Obligations that shall be satisfactory to the ABL Agents and (ii) the ABL Agents may not submit or consummate a Credit Bid Backup Bid for any DIP Term Loan Priority Collateral or Term Priority Collateral unless (a) all Prepetition Term Loan Credit Agreement Indebtedness and all DIP Term Loan Obligations are repaid in full in cash immediately upon the closing thereof or (b) the Term Agents agree to any other treatment of the Prepetition Term Loan Credit Agreement Indebtedness and the DIP Term Loan Obligations that shall be satisfactory to the lenders thereunder.  Notwithstanding the foregoing, the failure of the Official Committee of Unsecured Creditors (the "Committee") to object to the Credit Bid Backup Bid or any other credit bid made by the Term Agents, the ABL Agents, and/or the Prepetition Secured Parties (as defined in the Interim DIP Order [D.I. 68]) (collectively, the "Lenders") or the Court's approval of any such credit bid shall not (a) prejudice or impair the rights of the Committee to challenge the nature, extent, validity, priority, perfection and/or amount of the Lenders' alleged liens, security interests and claims or (b) release the Lenders from any causes of action which can be brought by or on behalf of the Debtors' estates absent further order of the Court.

7.	If the Term Agents agree to offer any Qualified Bidder financing in support of such Qualified Bidder's Bid, such financing will be on no better terms to the borrower than the

financing provided to the Stalking Horse Bidder under the Term Commitment Letter (as defined in the Stalking Horse APA).

**<u>Assignment Procedures</u>**

8.      The following Assignment Procedures shall govern the assumption and assignment of the Contracts in connection with the Sale, and any objections related thereto:

     a.  No later than 21 days before the U.S. Sale Hearing, the Debtors shall file with this Court and serve the Cure Notice on each Non-Debtor Counterparty to each of the Contracts.

     b.  In the event that the Debtors identify any Non-Debtor Counterparties which were not served with the Cure Notice, the Debtors may subsequently serve (by overnight mail) such Non-Debtor Counterparty with a Cure Notice, and the following procedures will nevertheless apply to such Non-Debtor Counterparty; <u>provided</u>, <u>however</u>, that, absent further order of the Court, the Cure/Assignment Objection Deadline (defined below) with respect to such Non-Debtor Counterparty shall be 4:00 p.m. (prevailing Eastern Time) on the date that is ten (10) days following service of the Cure Notice.

     c.  The Cure Notice served on each Non-Debtor Counterparty shall (i) identify each Contract; (ii) list the Cure Amount the Debtors believe is required to be paid pursuant to the Bankruptcy Code in order to effectuate the assignment of the Contract; (iii) include a statement that the assumption and assignment of such Contract is neither required nor guaranteed; and (iv) inform such Non-Debtor Counterparty of the requirement to file any Cure/Assignment Objections (defined below) by the Cure/Assignment Objection Deadline (defined below).  Service of a Cure Notice does not (x) constitute, and shall not be deemed, an admission that a particular Contract is an executory contract or unexpired lease of property, or (y) confirm that the Debtors are required to assume and/or assign such Contract.

     d.  Objections (a "<u>Cure/Assignment Objection</u>"), if any, to one or more of (i) a scheduled Cure Amount, (ii) the ability of the Stalking Horse Bidder or the Credit Bid Backup Bidder to provide adequate assurance of future performance, and (iii) the proposed assumption, assignment and/or transfer of such Contract (including the transfer of any related rights or benefits thereunder), other than objections that relate specifically to the identity of any Successful Bidder (other than the Stalking Horse Bidder or the Credit Bid Backup Bidder), must (x) be in writing; (y) state with specificity the nature of such objection, including the amount of Cure Amount in dispute; and (z) be filed with this Court and properly served on the Notice Parties (as defined below) so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on the date that is fourteen (14) days after service of the Cure Notice (the "<u>Cure/Assignment Objection Deadline</u>"), subject to subparagraph (b) above.  The hearing on any Cure/Assignment Objection to the

Credit Bid Backup Bid or the identity of the Credit Bid Backup Bidder will be automatically adjourned until such time as the Debtors file a notice designating the Credit Bid Backup Bid as the Successful Bid.

e. Objections of any Non-Debtor Counterparty related solely to the identity of, and adequate assurance of future performance by, the Successful Bidder (should the Successful Bidder be any party other than the Stalking Horse Bidder or the Credit Bid Backup Bidder) must (x) be in writing; (y) state with specificity the nature of such objection, and (z) be filed with this Court and properly served on the Notice Parties so as to be received no later than the Post-Auction Objection Deadline (defined below) and shall be heard at the Sale Hearing unless otherwise ordered by the Court or agreed to by the Debtors and the Successful Bidder.

f. Any Non-Debtor Counterparty to a Contract that fails to timely file and properly serve a Cure/Assignment Objection or Post-Auction Objection (as applicable) as provided herein will: (i) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Contract in the event it is assumed and/or assigned by the Debtors, and the Debtors and the assignee of the Contract shall be entitled to rely solely upon the Cure Amounts scheduled on the Cure Notice; and (ii) be deemed to have consented to the assumption, assignment and/or transfer of such Contract (including the transfer of any related rights and benefits thereunder) to the relevant assignee and shall be forever barred and estopped from asserting or claiming against the Debtors or the assignee that any additional pre-assignment amounts are due or defaults exist, or conditions to assumption, assignment, and/or transfer must be satisfied under such Contract, that any related right or benefit under such Contract cannot or will not be available to the relevant assignee, or that the assignee failed to provide such Non-Debtor Counterparty with adequate assurance of future performance.

g. If a Non-Debtor Counterparty files an objection satisfying the requirements of these Assignment Procedures that is not consensually resolved by the Sale Hearing, such unresolved objection will be considered at the Sale Hearing, provided, however, that any Contract that is the subject of a Cure/Assignment Objection with respect solely to the amount of the Cure Amount may be assumed and assigned prior to resolution of such objection, so long as the Debtors or assignee, as applicable, (i) pay any undisputed Cure Amount on or before (x) the Closing Date (as defined in the Stalking Horse APA) or, (y) in the event the Successful Bidder is a party other than the Stalking Horse Bidder, the date designated for consummating the Sale under such Successful Bidder's Purchase Agreement, and (ii) appropriately reserve funding for the disputed portion of the Cure Amount pending resolution of the dispute.

h. The Debtors' assumption and/or assignment of a Contract is subject to approval by this Court and consummation of the Sale. Absent entry of a Sale Order approving the assumption and/or assignment of the Contracts and consummation of the Sale, the Contracts shall be deemed neither assumed nor assigned, and shall in all respects be subject to subsequent assumption or rejection by the Debtors.

**Notice Procedures**

9.      The form of Notice of Auction and Sale Hearing in the form attached hereto as Exhibit 2 is approved, and the Debtors are authorized to make non-substantive or immaterial changes to the Notice of Auction and Sale Hearing or to fill in missing information, in each case to the extent not inconsistent with this Order, prior to service or publication of the Notice of Auction and Sale Hearing.

10.     On or before two (2) business days after entry of this Order, the Debtors will cause the Notice of Auction and Sale Hearing to be sent by first-class mail postage prepaid, to the following: (a) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware, 19801 (Attn: David L. Buchbinder, Esq.); (b) counsel to the ABL Agent, (i) Paul Hastings LLP, 515 S. Flower St., 25th Floor, Los Angeles, California 90071 (Attn: Peter S. Burke, Esq.) and Paul Hastings LLP, 200 Park Avenue, New York, New York 10166 (Attn: Andrew V. Tenzer, Esq. and Michael E. Comerford, Esq.), and (ii) Womble Bond Dickinson (International) Limited, 1313 North Market Street, Suite 1200, Wilmington, Delaware 19801 (Attn: Matthew P. Ward, Esq. and Morgan L. Patterson, Esq.); (c) counsel to the Term Loan Agent, (i) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Matthew S. Barr, Esq. and David N. Griffiths, Esq.), and (ii) Richards, Layton & Finger, P.A., 920 N. King St., Wilmington, Delaware 19801 (Attn: Paul N. Heath, Esq. and Zachary I. Shapiro, Esq.); (d) counsel to the Committee, (i) Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, New York, 10020 (Attn: Eric Chafetz, Esq. and Andrew Behlmann, Esq.), and (ii) Bayard, P.A., 600 N. King Street, Suite 400, Wilmington, Delaware 19801 (Attn: Justin R. Alberto, Esq. and Erin R. Fay, Esq.); (e) all persons known or reasonably believed to have asserted an interest in the U.S. Assets; (f) the Non-Debtor Counterparties to the

25744020.1

Contracts; (g) the Attorneys General in the State(s) where the U.S. Assets are located; (h) all state and local taxing authorities in the State(s) where the U.S. Assets are located; (i) the Internal Revenue Service; (j) all parties that have asserted liens against the U.S. Assets; and (k) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.

11.      In addition to the foregoing, on or before five (5) business days after entry of this Order, the Debtors shall, subject to applicable submission deadlines, publish the Notice of Auction and Sale Hearing, on one occasion, in the national edition of *USA Today*, and post the Notice of Auction and Sale Hearing and the Bidding Procedures Order on the website of the Debtors' claims and noticing agent, Prime Clerk LLC.

12.      No other or further notice of the sale of the Company Assets, the Auction, the Sale Hearing, or the Sale Objection Deadline shall be required.  Service and publication of the Notice of Auction and Sale Hearing as set forth herein is deemed to satisfy the notice requirements under Bankruptcy Rules 2002, 6004 and 6006, as well as Local Rule 6004-1, and to otherwise comply in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

13.      As soon as reasonably practicable following conclusion of the Auction, the Debtors shall file a notice on this Court's docket identifying the Successful Bidder(s) and any applicable Backup Bidder(s).

14.      The form of Cure Notice and the Assignment Procedures set forth herein are approved and are deemed to be sufficient to provide effective notice to the Non-Debtor Counterparties of the Debtors' intent to potentially assume and assign some or all of the Contracts and the Debtors' proposed Cure Amounts.    Such notice is deemed to satisfy the notice

requirements under Bankruptcy Rules 2002, 6004 and 6006, as well as Local Rule 6004-1, and to otherwise comply in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

### Auction and Sale Hearing

15. **Bid Deadline**. As further described in the Bidding Procedures, the deadline for Potential Bidders to submit bids (the "Bid Deadline") shall be **January 20, 2020 at 5:00 p.m. (ET)**. No bid shall be deemed to be a Qualified Bid unless such bid meets the requirements set forth in the Bidding Procedures, in consultation with the Consultation Parties.

16. **Auction; Cancellation of Auction**. Depending on the Bids received in accordance with the Bidding Procedures, the Debtors may conduct an Auction for the sale of the Company Assets. If at least one Qualified Bid (including a U.S./Canada Joint Bid, if any) is received in accordance with the Bidding Procedures with regard to the Company Assets, the Debtors shall be permitted to hold the Auction in accordance with the Bidding Procedures, which Auction shall take place on **January 23, 2020 at 10:00 a.m.** (prevailing Eastern Time) at the offices of counsel to the Debtors, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, or such later time or such other place as the Debtors shall designate. In the event the Debtors designate a later time or place for the Auction, they shall (i) notify all Qualified Bidders (as defined in the Bidding Procedures) who have submitted Qualified Bids, and (ii) file notice of such change with this Court and the CCAA Court.

17. If no Qualified Bids other than the Stalking Horse Bid are received in accordance with the Bidding Procedures, or if the only Qualified Bid received is a U.S. Only Bid or a Canada Only Bid, then the Debtors may decide, in the Debtors' reasonable business judgment in consultation with the Consultation Parties, to cancel the Auction and designate the Stalking Horse

Bid as the Successful Bid and the Credit Bid Backup Bid as the Backup Bid and pursue entry of the orders approving a Sale of the Company Assets to the Stalking Horse Bidder pursuant to the Stalking Horse APA.

18.     If the Auction is cancelled, the Debtors shall promptly file a notice of cancellation of the Auction and designation of the Stalking Horse Bid as the Successful Bid and the designation of the Credit Bid Backup Bid as a Backup Bid, if applicable, including a copy of the applicable Qualified Bid Documents for the Credit Bid Backup Bid.

19.     Each Qualified Bidder participating in the Auction will be required to confirm on the record at the Auction, that (a) it has not engaged in any collusion with respect to the Bidding Procedures and the Auction, (b) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder or Backup Bidder, and (c) the Qualified Bidder (other than the Credit Bid Backup Bidder) agrees to serve as the Backup Bidder if its Qualified Bid is the next highest or otherwise best bid after the Successful Bid.

20.     Notwithstanding anything in this Order to the contrary, (i) if no other Qualified Bids are received apart from the Stalking Horse Bid and the Auction is cancelled or (ii) no other Qualified Bids are received apart from the Credit Bid Backup Bid, the Credit Bid Backup Bidders may agree to be the Backup Bidder to the Stalking Horse Bid.

21.     If the Stalking Horse Bid is not consummated, the Debtors shall file a notice with the Court designating the Backup Bid as the Successful Bid, and such Backup Bid shall be deemed the Successful Bid for all purposes.  The Debtors will be authorized to consummate all transactions contemplated by the Backup Bid without further order of the Bankruptcy Courts or further notice to any party.

22.    **Notice for Contract Counterparties**.  The Debtors shall file with the Court and provide by overnight mail to any Contract Counterparty that is implicated by the Successful Bid or Backup Bid, a notice containing (a) the identity of the Successful Bidder and Backup Bidder, and (b) instructions for accessing adequate assurance information for such parties, which shall also be filed with the Court and posted on the Debtors' case website maintained by Prime Clerk. The Debtors shall file with the Court and serve, or shall cause their counsel and/or the claims and noticing agent to serve, such information on the affected Contract Counterparties within twenty-four (24) hours of the close of the Auction.

23.    **Sale Hearing**.  If the Auction is cancelled pursuant to Paragraphs 17-18 of this Order, the U.S. Sale Hearing shall instead be held before this Court on **January 23, 2020 at 1:30 p.m. (prevailing Eastern Time)**.  If the Auction is held, the U.S. Sale Hearing shall be held before this Court on **January 29, 2020 at 10:00 a.m. (prevailing Eastern Time)**.  At the U.S. Sale Hearing, the Debtors will seek the entry of a Sale Order approving and authorizing the Sale to the Successful Bidder(s).  The U.S. Sale Hearing (or any portion thereof) may be adjourned by this Court or the Debtors from time to time without further notice other than by announcement in open court or through the filing of a notice or other document on this Court's docket.  The U.S. Sale Hearing may be held jointly with the Canadian Sale Hearing.

24.    **Sale Objection Deadline**. Subject to paragraph 25, the deadline to object to the relief requested in the Motion, including entry of the proposed Sale Order (a "Sale Objection") is **January 10, 2020 at 4:00 p.m. (prevailing Eastern Time)** (the "Sale Objection Deadline").  A Sale Objection must be filed with this Court and served in the manner set forth below so as to be *actually received* no later than the Sale Objection Deadline.

25.    **Post-Auction Objection Deadline**.  The deadline to object only to (i) the conduct at the Auction (if held) or (ii) solely with respect to the Non-Debtor Counterparties to the Contracts, to the specific identity of and adequate assurance of future performance provided by the Successful Bidder (only if such Successful Bidder is not the Stalking Horse Bidder or the Credit Bid Backup Bidder) (such a limited objection, a "Post-Auction Objection") is 4:00 p.m. (prevailing Eastern Time) on January 27, 2020 (the "Post-Auction Objection Deadline").  A Post-Auction Objection must be filed with this Court and served in the manner set forth below so as to be *actually received* no later than the Post-Auction Objection Deadline.

### Objection Procedures

26.    Any party that seeks to object to the relief requested in the Motion or the relief granted herein, or to any actions taken in accordance herewith, shall file a formal written objection that complies with the objection procedures set forth herein.

27.    Objections, if any, must be: (i) in writing; (ii) signed by counsel or attested to by the objecting party; (iii) in conformity with the applicable provisions of the Bankruptcy Rules and the Local Rules; (iv) state with particularity the legal and factual basis for the objection and the specific grounds therefor; (v) be filed with this Court; and (vi) served on the following parties (the "Notice Parties"): (a) counsel for the Debtors, (1) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Alan W. Kornberg, Esq. and Kelley A. Cornish, Esq.), and (2) Young Conaway Stargatt & Taylor, LLP, 1000 N. King Street, Wilmington, Delaware 19801 (Attn: Pauline K. Morgan, Esq. and Ryan M. Bartley, Esq.); (b) counsel for the CCAA Debtors,  Bennett Jones LLP, 100 King St. W Suite 3400, Toronto, Ontario M5X 1A4 (Attn: Kevin Zych and Sean Zweig); (c) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware, 19801 (Attn: David L.

Buchbinder, Esq.); (d) counsel to the ABL Agent and ABL DIP Agent, (i) Paul Hastings LLP, 515 S. Flower St., 25th Floor, Los Angeles, CA 90071 (Attn: Peter S. Burke, Esq.) and Paul Hastings LLP, 200 Park Avenue, New York, New York 10166 (Attn: Andrew V. Tenzer, Esq. and Michael E. Comerford, Esq.), and (ii) Womble Bond Dickinson (International) Limited, 1313 North Market Street, Suite 1200, Wilmington, DE 19801 (Attn: Matthew P. Ward, Esq. and Morgan L. Patterson, Esq.); (e) counsel to the Term Loan Agent and the Term Loan DIP Agent, (i) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153 (Attn: Matthew S. Barr, Esq. and David N. Griffiths, Esq.) and (ii) Richards, Layton & Finger, P.A., 920 N. King St., Wilmington, DE 19801 (Attn: Paul N. Heath, Esq. and Zachary I. Shapiro, Esq.); (f) counsel to the Committee, (i) Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, New York, 10020 (Attn: Eric Chafetz, Esq. and Andrew Behlmann, Esq.), and (ii) Bayard, P.A., 600 N. King Street, Suite 400, Wilmington, Delaware 19801 (Attn: Justin R. Alberto, Esq. and Erin R. Fay, Esq.); and (g) the CCAA Monitor, Alvarez & Marsal Canada Inc., 200 Bay Street, Suite 2900, Royal Bank South Tower, Toronto, Ontario M5J 2J1 (Attn: Josh Nevsky), in each case so as to be received no later than the Cure/Assignment Objection Deadline, Sale Objection Deadline, or Post-Auction Objection Deadline, as applicable.

28.    Failure to file a Sale Objection on or before the Sale Objection Deadline (a) shall forever bar the assertion, whether at any Sale Hearing or thereafter, of any objection to the Motion, to entry of the Sale Order, and/or to the consummation and performance of the Sale with a Successful Bidder, and (b) for purposes of section 363(f)(2) of the Bankruptcy Code, shall be deemed to be "consent" to entry of the Sale Order and consummation of the Sale and all transactions related thereto free and clear of any interest in the U.S. Assets.

**Approval of Designation of Stalking Horse Bidder, Bid Protections, and Backup Bidder**

29.    The Debtors' designation of the Stalking Horse Bidder as the stalking horse purchaser is hereby approved.

30.    The Debtors' entry into the Stalking Horse APA is authorized and approved; provided that, for the avoidance of doubt, consummation of the Transactions contemplated by the Stalking Horse APA shall be subject to the Court's entry of the Sale Order and the satisfaction or waiver of the other conditions precedent to Closing (as defined in the Stalking Horse APA) on the terms set forth in the Stalking Horse APA.

31.    Solely to the extent provided for in Section 7.1 of the Stalking Horse APA, the Break-Up Fee, in the reduced amount of $23,125,000, and the Expense Reimbursement shall be payable by the Debtors and granted allowed administrative expense status under sections 503(b), 507(a)(2) and 507(b) of the Bankruptcy Code that shall be superior to all other administrative expense claims against the Debtors other than the Carve-Out, and subject to the Term Loan DIP Superpriority Claims, ABL DIP Superpriority Claims, and Adequate Protection 507(b) Claims (as such terms are defined in the Interim DIP Order).

**Other Relief Granted**

32.    In resolution of the *United States' Limited Objection to Motion for Approval of Proposed Bidding Procedures Order*" [Docket No. 112] the Debtors agree that (a) for the United States, on behalf of the Antitrust Division of the United States Department of Justice ("US DOJ"), the Sale Objection Deadline is January 16, 2020 at 4:00 pm (ET); and (b) the Debtors will use commercially reasonable efforts to provide, or have provided to, the US DOJ such adequate assurance of future performance information as is reasonably requested by the DOJ regarding any Successful Bidder or Backup Bidder's ability to satisfy the Liabilities of Sellers under the DOJ

Agreement (as such terms are defined in the Stalking Horse APA) to the extent such liabilities are assumed by such Successful Bidder or Backup Bidder.

33.      Absent a subsequent order of this Court to the contrary, this Order shall be binding in all respects upon any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Debtors' bankruptcy cases or upon a conversion to chapter 7 under the Bankruptcy Code.

34.      Nothing herein shall be deemed to or constitute the assumption, assignment or rejection of any executory contract or unexpired lease.

35.      Notwithstanding any provision in the Bankruptcy Rules to the contrary, the stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived and this Order shall be effective immediately and enforceable upon its entry.

36.      In the event of any conflict between this Order and the Motion and/or the Bidding Procedures, this Order shall govern in all respects.

37.      The requirements set forth in Local Rules 6004-1, 9006-1, and 9013-1 are hereby satisfied or waived.

38.      This Court shall retain exclusive jurisdiction over any matters related to or arising from the implementation of this Order.

Dated: _____, 2019
          Wilmington, Delaware

_____
Laurie Selber Silverstein
United States Bankruptcy Judge

25744020.1          **Dated: December 19th, 2019**
                    **Wilmington, Delaware**

**LAURIE SELBER SILVERSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**